NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**UNITED ACCESS TECHNOLOGIES, LLC,**
*Plaintiff-Appellant*

**v.**

**AT&T CORP., AT&T SERVICES, INC., SBC INTERNET SERVICES, INC., CENTURYTEL BROADBAND SERVICES LLC, QWEST CORPORATION,**
*Defendants-Appellees*

---

2021-2002, 2021-2007

---

Appeals from the United States District Court for the District of Delaware in Nos. 1:11-cv-00338-KAJ, 1:11-cv-00339-KAJ, Circuit Judge Kent A. Jordan.

---

Decided:  April 15, 2022

---

ANTHONY MATTHEW GARZA, Charhon, Callahan, Robson, & Garza PLLC, Dallas, TX, argued for plaintiff-appellant.  Also represented by STEVEN CHASE CALLAHAN, BRETT CHARHON.

MICHAEL HAWES, Baker Botts L.L.P., Houston, TX, argued for defendants-appellees AT&T Corp., AT&T

Services, Inc., SBC Internet Services, Inc.  Also represented by JOHN GAUSTAD, JON V. SWENSON, Palo Alto, CA; DOUGLAS M. KUBEHL, Dallas, TX.

MATTHEW CHRISTOPHER GAUDET, Duane Morris LLP, Atlanta, GA, for defendants-appellees CenturyTel Broadband Services LLC, Qwest Corporation.  Also represented by ALEKSANDER JERZY GORANIN, Philadelphia, PA.

—————————

Before LOURIE, BRYSON, and PROST, *Circuit Judges.*

BRYSON, *Circuit Judge.*

In these two related patent cases, appellant United Access Technologies, LLC, ("UAT") appeals from the district court's grant of summary judgment of non-infringement.[1] We affirm in one of the two cases and dismiss in the other.

I

These cases have come before us on two prior occasions. In *United Access Techs., LLC v. CenturyTel Broadband Servs. LLC* (*UAT I*), 778 F.3d 1327 (Fed. Cir. 2015), we held that a prior jury verdict of non-infringement in a case involving a different defendant, Earthlink, Inc, did not collaterally estop UAT from bringing an infringement action against CenturyTel.  In *United Access Techs., LLC v. AT&T Corp.* (*UAT II*), 757 F. App'x 960 (Fed. Cir. 2019), we affirmed the district court's holding that the asserted claims were not indefinite and modified the district court's construction of a disputed claim term.  A thorough discussion

—————————

[1]     Appeal No. 21-2002 relates to UAT's infringement action against AT&T Corp., AT&T Services, Inc., and SBC Internet Services, Inc. (collectively, "AT&T").  Appeal No. 21-2007 relates to UAT's infringement action against CenturyTel Broadband Services LLC and Qwest Corporation (collectively, "CenturyTel").

of the factual background of these cases can be found in those earlier opinions.

In the two complaints, UAT alleged that AT&T and CenturyTel infringed various claims of three patents: U.S. Patent No. 5,844,596 ("the '596 patent"); U.S. Patent No. 6,243,446 ("the '446 patent"); and U.S. Patent No. 6,542,585 ("the '585 patent"). The asserted patents are directed to a system for facilitating "simultaneous two-way communication of video signals and other signals between multiple networks of telephone wiring." '596 patent, col. 1, ll. 23–25. In the systems described by the patents, video signals are transmitted on the same lines as telephone signals, but on different frequencies from the telephone signals. *Id.* at col. 3, line 58, through col. 4, line 6. Such a system "eliminates the need for installation of multiple co-axial branches within a residence." *Id.* at col. 3, ll. 33–34.

Claim 61 of the '596 patent is representative. It recites:

61. A system for communicating information between an external source of information and a plurality of destinations of information over a telephone wiring network used for passing telephone signals in a telephone voice band between a plurality of telephone devices and a telephone exchange, comprising:

> a plurality of transceivers coupled between the telephone wiring network and corresponding destinations of information, each including

>> circuitry for accepting signals in a high frequency band of frequencies above the highest frequency of the telephone voice band and rejecting signals in the telephone voice band; and

4          UNITED ACCESS TECHNOLOGIES, LLC v. AT&T CORP.

> a signal interface coupled between the external source of information and the telephone wiring network, including
>
>> circuitry for receiving a plurality of external signals encoding a plurality of information streams from the external source of information, and
>>
>> circuitry for transmitting to selected sets of one or more of the plurality of transceivers a corresponding plurality of internal signals in the high frequency band each encoding one of the plurality of information streams over the telephone wiring network;
>
> wherein the telephone wiring network includes a branch network which couples one of the plurality of telephone devices to the telephone exchange telephone exchange [sic], and the branch network includes circuitry for preventing transmission of signals in the high frequency band to the one of the telephone devices on the branch network.

The dispute in this appeal focuses on the term "signal interface." In *UAT II*, we held that the term "signal interface" refers to "a device interposed on the opposite end (i.e., the local side) of the public trunk line (i.e., on the local side of the telephone lines comprising the public telephone network) from the telephone exchange that performs the recited functions of the incorporated circuitry." *UAT II*, 757 F. App'x at 968. We also held that the "public telephone network" is not defined by whether the lines are owned by the telephone company. *Id.*

AT&T's accused systems contain a Digital Subscriber Line Access Multiplexer ("DSLAM"), which UAT argues is the "signal interface" referred to in the claims. In the accused systems that are the focus of this appeal, the DSLAM is located inside a "remote terminal." The remote terminal resides between the telephone company's central office (or "telephone exchange") and customer residences.[2] From the remote terminal, signals are transmitted along bundled groups of twisted-wire pairs toward the customers' residences.

AT&T's systems also include "serving terminals" that are located between the remote terminals and the customers' residences. A serving terminal is not capable of transforming or modifying the signals it receives; it merely connects each twisted-wire pair entering the serving terminal with a single twisted-wire pair leaving the serving terminal. Upstream of the serving terminal, the twisted-wire pairs carrying signals destined for specific subscribers are bundled together. Downstream of the serving terminal, the twisted wire pairs are separately directed to customers' residences.[3] The dispute in these cases centers on where the "public trunk line" ends. If it ends downstream of the DSLAM (e.g., at the serving terminal), the DSLAM cannot satisfy the "signal interface" limitation because the DSLAM is not on "the local side" of the public trunk line. *See UAT II*, 757 F. App'x at 968. By contrast, if the public trunk line ends at or upstream of the remote terminal, AT&T's DSLAMs may satisfy that limitation.

---

[2]    UAT also accused other systems in which the DSLAM was positioned in the telephone company's central office, but those systems are no longer at issue in this case.

[3]    "Upstream" refers to signals being transmitted in the direction of the central office, and "downstream" refers to signals being transmitted in the direction of the individual residences.

On remand from our decision in *UAT II*, the defendants moved for summary judgment of noninfringement. The district court granted the motion, holding that the undisputed evidence established that in the accused systems "the boundary between the local and non-local portions of the public telephone network is at a point downstream of the remote terminal." *United Access Techs., LLC v. AT&T Corp.* (*Summary Judgment Op.*), No. 1:11-cv-338, 2021 WL 1840785, at *6 (D. Del. Apr. 30, 2021). The district court noted that UAT had not offered evidence to the contrary, because "UAT's expert only analyzed the nature of the lines upstream, not downstream, of the remote terminal." *Id.* These appeals followed.

II

A

We begin by addressing our jurisdiction. We have jurisdiction over an appeal from a final decision of a district court. 28 U.S.C. § 1295(a)(1). In these cases, the district court's grant of summary judgment of non-infringement resolved all of UAT's claims against the defendants. The district court declined to enter a final judgment in either case, however, due to a pending counterclaim of invalidity in the CenturyTel case. *See generally United Access Techs., LLC v. CenturyTel Broadband Servs., LLC*, No. 1:11-cv-339, Dkt. No. 352 (D. Del. May 13, 2021) (Transcript of May 12, 2021, teleconference). Without obtaining the district court's approval, the parties then stipulated to a without-prejudice dismissal of CenturyTel's counterclaim under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and UAT subsequently filed notices of appeal in both cases.

We have repeatedly held that an order adjudicating a plaintiff's infringement claims is not an appealable order if an unadjudicated counterclaim of invalidity remains pending. *Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1293–94 (Fed. Cir. 2005); *Nystrom v. TREX Co*, 339 F.3d 1347, 1351 (Fed. Cir. 2003). *Baker v. Microsoft Corp.*, No. 2017-1928,

2017 WL 4685332, at *1 (Fed. Cir. June 13, 2017).  In this circuit, a court-approved dismissal of all remaining claims, whether with or without prejudice, is sufficient to create finality for purposes of appellate jurisdiction.  *See Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 604–05 (Fed. Cir. 2015).  But the stipulation of dismissal without prejudice in the CenturyTel case was made without the approval of the district court.  There was therefore no final appealable order in that case.  *See Robinson-Reeder v. Am. Council on Education*, 571 F.3d 1333, 1339–40 (D.C. Cir. 2009) (holding that a stipulation of dismissal without prejudice under Rule 41(a)(1)(A)(ii), made without the district court's approval, did not create finality under 28 U.S.C. § 1291, the statute analogous to our jurisdictional statute, 28 U.S.C. § 1295).

Accordingly, the appeal in the CenturyTel case, No. 21-2007, is dismissed.  In case No. 21-2002, AT&T did not file a counterclaim, and we therefore have jurisdiction over that appeal.[4]  For that reason, we proceed to the merits with respect to the appeal in case No. 21-2002.

B

In challenging the district court's summary judgment order, UAT raises two arguments.  First, UAT argues that the district court imported an additional limitation into the claims when it concluded that the public trunk line ends at the "furthest downstream point of convergence."  *See*

---

[4]    The district court never entered a final judgment in the AT&T case, but the failure to docket a document labeled "judgment" does not preclude appellate jurisdiction so long as all claims in the action have been resolved.  *See FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 277 (1991) (holding that a summary judgment ruling resolving all of the plaintiff's claims was final, even though a final judgment had not formally been entered).

*Summary Judgment Op.* at \*6.  Second, UAT argues that there was sufficient evidence in the record to create a triable issue of fact with respect to literal infringement of the asserted claims.  Because UAT has not raised a triable issue with respect to whether the public trunk line ends at the DSLAM, we affirm without reaching UAT's argument regarding the "furthest downstream point of convergence."

The district court granted summary judgment because "there [was] nothing to support UAT's argument that the remote terminal, containing the DSLAM, is on the local side of the network."  *Id.* at \*4.  We agree.  UAT offered no evidence that AT&T's remote terminals were located downstream of the public trunk line.

In support of its contention that AT&T's remote terminals are not on the public trunk line, UAT points to three excerpts from the report of its expert, Dr. Tim Williams.  First, UAT points to Dr. Williams' assertion that the remote terminal "is downstream of the telephone exchange, towards the local (customer) end of the overall network" and that the DSLAM is "interposed on the local side of the public trunk line from the telephone exchange, and opposite the telephone exchange."  J.A. 10846, ¶ 324; *see also* J.A. 10848, ¶ 331.  Second, UAT points to a series of diagrams that denote the lines running between the remote terminal and the serving terminal as "extended pairs."  *See, e.g.*, J.A. 10839, 10841.  Third, UAT calls our attention to Dr. Williams' statement that "[f]or each of AT&T's accused systems, the DSLAM acts as the signal interface."  J.A. 10846, ¶ 322.

There are two problems with that evidence.  First, while those statements assert that the DSLAM is "on the local side" of the public trunk line from the telephone exchange, they do not squarely address the question whether any of the lines downstream of the DSLAM are part of the public trunk line.  In fact, at his deposition, Dr. Williams made clear that he was not taking a position on that issue:

Q: And are there any telephone lines comprising the public telephone network downstream of the remote terminal?

A: I have not expressed that opinion.

Q: You've provided no opinion that there are or are not telephone lines comprising the public telephone network downstream of AT&T's remote terminals; is that correct?

A: No, not correct.

Q: Well, do you have an opinion that there are no telephone lines comprising the public telephone network downstream of AT&T's remote terminals?

A: Again, I have not expressed that opinion; however, to find infringement, I would have to find a signal interface which, as defined by the court, is a device interposed on the opposite end of the public trunk line from the telephone exchange that performs the recited functions of the incorporated circuitry.

So the signal interface would need to be at the opposite end of the public trunk line from the telephone exchange. And you're asking me about other architectures that I have not expressed an opinion on.

Q: So you have not expressed an opinion that there are no telephone lines comprising the public telephone network downstream of AT&T's accused remote terminals?

A: I believe I've testified as to that at least three times now.

J.A. 6686–87 (lightly edited for readability).

Second, even if the statements in Dr. Williams' report were squarely directed to whether the DSLAMs in AT&T's

system are on the local lines rather than on the public trunk lines, those statements are wholly conclusory. Such statements are not sufficient, standing alone, to create a triable issue of fact with regard to infringement. *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1047 (Fed. Cir. 2000) ("[A] party may not avoid summary judgment simply by offering an opinion of an expert that states, in effect, that the critical claim limitation is found in the accused device."); *see also Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) ("If all expert opinions on infringement or noninfringement were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation.").

Accordingly, UAT has not pointed to evidence that raises a jury question as to literal infringement. That is true regardless of whether the district court was correct in stating that the public trunk line must end at the "furthest downstream point of convergence." *Summary Judgment Op.* at *6. We therefore need not reach that issue.

C

UAT argues that even if the district court was correct to grant summary judgment with respect to literal infringement, the court should have permitted UAT to proceed to trial on a doctrine-of-equivalents theory.

In general, "to find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346–47 (Fed. Cir. 2013) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). However, when the alleged equivalent would "vitiate an element of the claims," there can be no infringement under the doctrine of equivalents. *Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1315 (Fed. Cir. 2008). A claim term is vitiated when the proposed equivalency "embrace[s] a structure that is specifically excluded from the

scope of the claims." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) (citation omitted).

Under the claim construction that we adopted in *UAT II*, the signal interface must be positioned "on the opposite end (i.e., the local side) of the public trunk line." *UAT II*, 757 F. App'x at 968. In its summary judgment opinion, the district court held that UAT could not proceed under the doctrine of equivalents because "the purposes behind the locational limitation would be vitiated by treating the DSLAM in the remote terminal as the signal interface." *Summary Judgment Op.* at *5. We agree.

The specifications of the asserted patents provide two reasons for positioning the signal interface at the local end of the public trunk line. First, one function of the signal interface is to filter out high-frequency signals before they are conducted onto the public telephone line, because governmental regulations "severely limit[] the energy that can be conducted onto the public network by signals above voiceband and below 6 Mhz." '596 patent, col. 48, ll. 37–46. Second, when telephone lines "run parallel and very close to each other for a long distance," there is "a significant possibility of crosstalk interference between the various signals" being transmitted on each line. *Id.* at col. 17, ll. 30–38. As noted by AT&T's expert, Dr. Matthew Shoemake, the positional limitation of the signal interface is informed by both of those considerations. J.A. 6799 at ¶ 234 n.25.

To allow the signal interface to be placed on the public trunk line would undercut both of those considerations. Placing the signal interface on the public trunk line would necessarily require that high-frequency signals travel upstream along the public trunk line until they reach the signal interface, potentially running afoul of the government

12    UNITED ACCESS TECHNOLOGIES, LLC v. AT&T CORP.

regulations described in the patents.[5]  Likewise, placing the signal interface at a point on the public trunk line would increase the distance between the individual residences and the signal interface, thus increasing the risk of crosstalk among the twisted-wire pairs.

As a result, to permit UAT to argue a theory of infringement that allows the signal interface to be located along the public trunk line at some distance from the local lines would "embrace a structure that is specifically excluded from the scope of the claims," which require that the signal interface be located at the end of the public trunk line.  *See Athletic Alternatives*, 73 F.3d at 1582 (citation omitted).

Furthermore, UAT has not suggested that the DSLAMs in AT&T's systems are located so close to the intersection between the local lines and the public trunk lines that the positional difference between AT&T's systems and the structure claimed in the asserted patents is insubstantial.  As AT&T points out, UAT's arguments regarding the doctrine of equivalents would appear to apply to placing the signal interface anywhere on the public trunk line, which would effectively eliminate the positional limitation of the claimed "signal interface" in its entirety.

The district court therefore did not err in determining that "the purposes behind the locational limitation would be vitiated by treating the DSLAM in the remote terminal as the signal interface." *Summary Judgment Op.* at *5. We therefore uphold the district court's grant of summary judgment of non-infringement to AT&T on both literal

---

[5]    At oral argument, AT&T explained that its accused systems do not violate the government regulations discussed in the patents because AT&T is able to minimize the energy that is conducted at high frequencies onto the public telephone network so that AT&T is in compliance with those regulations.  *See* Oral Argument at 27:23–28:52.

infringement and infringement under the doctrine of equivalents.

Costs to the appellees.

**AFFIRMED-IN-PART AND DISMISSED-IN-PART**