**ANCHOR WALL SYSTEMS, INC., Plaintiff,**

v.

**ROCKWOOD RETAINING WALLS, INC., GLS Industries, Inc., Equipment, Inc., Raymond Price, and Gerald P. Price, Defendants.**

No. CIV.99–1356 DSD/JMM.

United States District Court,
D. Minnesota.

April 5, 2002.

Alan G. Carlson, Jeffer Ali, Gregory M. Ansems, William F. McIntyre, Jr., and Merchant & Gould, Minneapolis, MN, and Douglas A. Strawbridge, Anchor Wall Systems, Minnetonka, MN, counsel for plaintiff.

Malcolm L. Moore, and Moore & Hansen, Minneapolis, MN, Randall T. Skaar, Eric H. Chadwick, Scott G. Ulbrich, and Patterson Thuente, Skaar & Christensen, Minneapolis, MN, Jonathan D. Jay, Fogg,

Slifer, Polglaze, Leffert & Jay, Minneapolis, MN, counsel for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on cross-motions of the parties for partial summary judgment and cross-motions to strike. Based on a review of the file, record and proceedings herein, and for the reasons stated, defendants' motion for partial summary judgment of noninfringement of U.S. Patent Nos. 5,490,363 (the " '363" patent), 5,704,183 (the " '183" patent), and 5,711,129 (the " '129" patent) is granted; defendants' motion for partial summary judgment of noninfringement of U.S. Patent Nos. 5,827,015 (the " '015" patent), 6,142,713 (the " '713" patent), and 6,183,168 (the " '168") is granted; defendants' motions to strike the declarations of Peter Janopaul are granted; and plaintiff's motion to strike the declaration of Raymond Price is granted.

## BACKGROUND

This is a dispute over the alleged infringement of six patents relating to masonry blocks used to build retaining walls. The plaintiff in this action, Anchor Wall Systems, Inc. ("Anchor"), manufactures masonry blocks that can be stacked in an interlocking manner to form retaining walls that resist ground pressure without requiring any additional support structure. Defendant Rockwood Retaining Walls, Inc. ("Rockwood") also manufactures masonry blocks used to erect retaining walls.[1] For purposes of organization, the court will divide its analysis into three parts: (1) the motions to strike; (2) the court's determi-

nation that defendant's Classic block does not infringe the '363, '183, and '129 patents; and (3) the court's determination that defendant's Cottage blocks do not infringe the '015, '713 and '168 patents.

## DISCUSSION

### I. The Motions to Strike

■ Defendants move to strike the expert testimony of Peter Janopaul (the "Janopaul declarations") from the evidentiary record, asserting that the Janopaul declarations cannot be allowed because their submission is untimely and contradict prior sworn testimony. The court agrees and will grant these motions.

One of the purposes of modern discovery is to eliminate surprise. *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir.1999). In this litigation, the consolidated pretrial scheduling order of March 7, 2001, required that discovery under Fed.R.Civ.P. 26(a)(2)(A) and 26(a)(2)(B) close as of November 1, 2001. The Janopaul declarations were served on the defendants after the close of discovery in this case. They therefore are untimely.

Plaintiff argues that it was late in submitting the Janopaul declarations because defendants caused delays in other phases of discovery. Plaintiff further suggests that the court should not enforce the deadlines of its scheduling order given defendants purported recurrent tardiness. This argument fails. Plaintiff had several remedial motions and objections at its disposal during this time period. While no discovery period can be perfect, both parties are equally equipped with tools for ensuring that the fact-finding process is

---

1. The parties agree that the art of protrusions and matching insets in masonry blocks is old and that the field is seemingly crowded. The '363 patent discloses more than 300 prior art references. The '015 patent lists several hundred examples of prior art, including United States patents, foreign patents, and other publications. In view of the "crowdedness" of the art, the novel features of one block versus another often amounts to only small differences.

conducted in a manner fair to them. Objections to discovery are waived if not timely raised. *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981) ("the failure to object within the time fixed for its answer generally constitutes a waiver of any objection."). *See also Applied Sys., Inc. v. N. Ins. Co. of New York*, Civ. No. 97–1565, 1997 WL 639235, at *1 (N.D. Ill. Oct 7, 1997) ("failure to object to a discovery request in a timely fashion may constitute waiver of the objection.") Since plaintiff chose not to raise these purported objections, plaintiff will be held to the deadlines set forth by this court. Accordingly, the declarations will be stricken.[2]

Plaintiff has also moved to strike the declaration of Raymond Price asserting that he is not qualified to interpret the Anchor Wall patents in this dispute and because his declaration is inconsistent with his prior deposition testimony. After careful consideration, the court agrees and will strike the Price declaration.

## II. The Classic Block and the '363, '183, & '129 Patents

Anchor is the holder of the '363, '183, and '129 patents that claim, among other things, the interlocking features of the blocks as Anchor's invention. Rockwood produces a "Classic" block that, according to Anchor, infringes on these patents.

The features described in Anchor's patent claims are protrusions and matching insets in each block that allow separate stacked blocks to adjoin and hold each other in place.[3] The accused Classic block has an "interlocking anchor bar" that similarly "locks" the block into the two blocks below it.

Rockwood brings two motions for partial summary judgment. The first motion is under a theory of noninfringement. Rockwood asserts that its Classic block does not infringe upon the '363, '183, and '129 patents because they do not have the claim limitations required by each of the asserted claims of the patents. That is, Rockwood asserts that these patents are not infringed as a matter of law because the claims at issue are narrow and do not claim features of the accused block. The second motion advances a theory of invalidity. Rockwood asserts that the '363, '183, and '129 patents are invalid as a matter of law since a Japanese Unexamined Utility Model Publication 59–167842 (the "Japanese Reference") anticipates the invention claimed by the Anchor patents.[4]

After careful consideration, the court agrees with Rockwood that the undisputed evidence demonstrates that there is no infringement as a matter of law of the '363, '183 and '129 patents and that

2. The court also concludes that a separate ground for granting the motions to strike exists since a party may not submit affidavits purporting to create a genuine issue of fact if they simultaneously contradict prior sworn testimony by the affiant. *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030 (8th Cir.2000); *see also Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir.1983). Since the Janopaul declarations repeatedly contradicts Janopaul's previous sworn testimony, the court must strike them.

3. The preferred system in the '363, '183, and '129 patents describes the protrusion as coming out from the top surface of each

block. The insets lie in both sides of the block and extend from the top to bottom surfaces of the block. The patents set forth several embodiments of this system. They also describe how the sizes and positions of the protrusions with respect to the insets can be varied so as to create play between the interlocking parts of stacked blocks. This play allows the movement of blocks necessary for arranging, in addition to vertical walls, slanted walls and walls curving horizontally.

4. The Japanese Reference describes as its invention a masonry block having a protrusion and insets similar to those claimed in the '363, '183, and '129 patents.

defendants are entitled to summary judgment.[5]

### A. Legal Standard for Summary Judgment

The court applies the same summary judgment standard to motions involving patent claims as it does to motions involving other types of claims. *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

On a summary judgment motion, the evidence is viewed in the light most favorable to the non-movant and all justifiable inferences are to be drawn in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the non-moving party cannot rest upon mere denials or allegations in the pleadings. *Id.* at 250, 106 S.Ct. 2505. Nor may the non-moving party simply argue that facts supporting its claims may be developed later or at trial. *Id.* Rather, the non-moving party must set forth specific facts, by affidavit or otherwise, to raise a genuine issue of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co.,* *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Infringement

The owner of a patent may recover for infringement if the defendant "without authority makes, uses, offers to sell, or sells any patented invention ..." 35 U.S.C. § 271(a) (2000). The patent holder has the burden of proving infringement by a preponderance of the evidence. *See Lemelson v. United States*, 752 F.2d 1538, 1547 (Fed.Cir.1985).

A determination of patent infringement requires a two-step analysis. First, each claim alleged to be infringed must be properly construed to determine its scope and meaning. *See Carroll Touch, Inc. v. Electro Mech. Sys., Inc.* 15 F.3d 1573, 1576 (Fed.Cir.1993). Second, the properly construed claims must be compared to the accused product or process. *See id.* A product infringes a patent if it contains every limitation of any one claim or an equivalent of each limitation not literally met. *See Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 397 (Fed.Cir. 1994); *Becton Dickinson & Co. v. C.R. Bard. Inc.*, 922 F.2d 792, 796 (Fed.Cir. 1990). Infringement may be found under the doctrine of equivalents if the accused device or process has elements or process steps that perform substantially the same function in substantially the same way to obtain substantially the same result as the patented device or process. *See Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

The first step in determining whether a patent has been infringed, claim construc-

---

**5.** Since the court grants defendants summary judgment on this basis, it will not address the alternative motion for partial summary judgment on invalidity. However, the court does note, without going into great detail, that in the alternative, it did find defendants' argument to be persuasive and believes defendants would be also entitled to partial summary judgment on invalidity.

tion, is a matter of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995). Claims are construed as one of ordinary skills in the art at the time of invention would have understood them. *See id.* at 979. In interpreting an asserted claim, the court should look first to the intrinsic evidence, that is, the patent's claim language, specification, and prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). As for claim language, the court should generally attribute the ordinary meaning to a disputed claim term, unless the patentee clearly states in the specification that he or she defines the term in the specification in a way that is inconsistent with its ordinary meaning. *Id.* (citations omitted). *See also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed.Cir. 2001) ("the district court properly followed the invocation that '[c]laims must be read in view of the specifications, of which they are a part.'" (quoting *Markman*, 52 F.3d at 979–980)).

In addition to the specification of a patent, arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of the terms in the claims. *See Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir. 1995), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *See id.*

If the parties do not dispute any relevant facts about the accused invention but instead assert two different meanings for the patent's claims, then "the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed.Cir.1996). Even if the parties disagree about the meaning of key terms in the patent claims, summary judgment may be appropriate since a mere dispute over the meaning of a term does not in and of itself create an issue of fact. *See id.*

Here, the relevant facts of the invention are not contested and the parties dispute only the proper interpretation to be given to the claims. The court is asked to decide whether the claim terms "mate," "back surface," and "protrusion" appearing in the '363, '183, and '129 patents have special limited meanings so as to exclude the features of the defendants' Classic block from the subject matter claimed as the invention. The court holds as a matter of law that these terms do have such special limited meanings. Since defendants have persuaded the court respecting the proper construction to be given to the claims, the defendants' motion for partial summary judgment of noninfringement must be granted.

### 1. Claim Construction

The court's construction of the claims that Anchor alleges are infringed by the Classic block is amenable to simplification. The court must examine only a handful of claim terms to determine whether Anchor's patents have been infringed. That is true because each claim of the '363, '183, and '129 patents asserted against the accused device contains identical claim terms. They all contain the following phrase:

a front surface, a **back surface**, a top surface and bottom surface, and first and second sides, said first side having a first inset wherein said first inset extends from said block top surface to said block bottom surface, said second side having a second inset wherein said second inset extends from said block top

surface to said block bottom surface, said block comprising a **protrusion** on one of said top or bottom surfaces, said **protrusion,** configured to **mate** with the inset of one or more adjacently positioned blocks.

(U.S. Patent Nos. 5,490,363, 5,704,183, and 5,711,129 (emphasis added).) This phrase constitutes an independent claim in each of the three patents. A dependent claim contains all of the limitations of the claim from which it depends. 35 U.S.C. § 112, ¶ 4. By way of logical syllogism, a dependent claim is infringed only if all the limitations of the independent claim are infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989). Therefore, the court may confine its discussion to the claim terms "mate," "back surface," and "protrusion" appearing in this independent claim.

Plaintiff requests the adoption of the ordinary meaning of the claim terms in the '363, '183, and '129 patents and asserts that Rockwood's construction of the claims improperly imports limitations from the preferred embodiments in the specifications into the claims, which is prohibited. However, plaintiff confuses the importation of limitations into the claims, which is not permitted, with the necessary process of reading the claims in light of the specifications. *See, e.g., Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed.Cir.1998) ("one may not read a limitation into a claim from the written description, but ... may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part. These two rules lay out the general

relationship between the claims and the written description"); *see also SciMed Life*, 242 F.3d at 1341 ("[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."). In this case, the court concludes that the reach of the claims of the Anchor patents is limited by their written descriptions. *See SciMed,* 242 F.3d at 1340 (written description can provide guidance as to the meaning of the claims thereby dictating the manner in which the claims are to be construed, even if the guidance is not provided in explicit definitional format).

A party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim from which to draw in those statements. *See Renishaw,* 158 F.3d at 1248. Defendants have satisfactorily pointed to terms that allow the court to draw the special limited meanings into the claims. The claim language thus requires every special limited meaning that the court adopts in its claim construction.

### a. The Claim Term "Mate"

The court concurs with defendants that the proper construction of the claim term "mate" must include the following limitations: (1) a close confinement of the protrusion within the inset(s) of one or more blocks; (2) an ability to secure the blocks in place; [6] and (3) an interlocking of

---

**6.** The court also agrees with defendants' assertion that the meaning of the claim term "mate" includes the ability to restrict the movement of the block in a forwards and backwards direction. However, such a limitation is subsumed within the ability to secure

the blocks in place. This limitation is not discrete enough to warrant addressing it separately. The court thus adopts this special limited meaning as part of the ability to secure the blocks in place.

the protrusion with the insets. This special limited meaning of "mate" is appropriate given the term's ordinary meaning as it appears in a general definition dictionary, the use to which "mate" is subjected throughout the specifications and the prosecution history.

Dictionaries, which are a form of extrinsic evidence, hold a special place and may sometimes be considered along with the intrinsic evidence in construing claims. *See Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1459 (Fed.Cir.1998); *see also Vanguard Prod. Corp. v. Parker Hannifin Corp.,* 234 F.3d 1370, 1372 (Fed. Cir.2000) ("a dictionary is often useful to aid the court in determining the correct meaning to be ascribed to a term as it was used"). According to *Merriam–Webster's New Collegiate Dictionary* 716 (10th ed.1998), the term "mate" ordinarily means "to join or fit together." The patent applicant chose the term "mate" to describe the interrelationship of the protrusion and insets in separate blocks stacked upon each other. "Mate" necessarily implies two things joining together to create one.

It is true that dictionary definitions often may not represent the meaning of a claim term to one of ordinary skill in the art, and that the court should not manufacture such a technical meaning from an ordinary one. "Courts must exercise caution lest dictionary definitions, usually the least controversial source of extrinsic evidence, be converted into technical terms of art having legal, not linguistic, significance." *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1478 (Fed. Cir.1998). It is also true that dictionary definitions, which are extrinsic evidence,

must not be used to contradict the meaning of claim terms maintained throughout the specification. *See Pitney Bowes v. Hewlett–Packard Co.,* 182 F.3d 1298, 1309 (Fed.Cir.1999) (holding that *Vitronics* "warned courts not to rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from thoughtful examination of the claims, the written description, and the prosecution history—the intrinsic evidence.")

Here, the dictionary definition of "mate" presents none of these problems. It is not inconsistent with the meaning of the term to one skilled in the art. Nor does it contradict the meaning of "mate" apparent from the specifications. Rather, the ordinary meaning of "mate" invites the special limited meanings put forth in the specifications.

### i. Close Confinement

The specifications of the '363, '183, and '129 patents state that "the area of the inset adjacent the block bottom surface 8 should be approximately the same areas as, or only slightly larger than, protrusion 26 with which it will mate." ('183 Patent, col. 4, ln. 38–41.) The oversize of the inset with respect to the protrusion provides the block with setback capability of 1/8 to 3/4 inch. ('183 Patent, col. 4, ln. 52–57.) The court is satisfied that the qualitative description, i.e. "only *slightly* larger than" (emphasis added), and quantitative measure provided, 1/8 to 3/4 inch, are together sufficient to attach a connotation of close confinement to "mate." [7]

Plaintiff attempts to rebut defendants' argument that "mate" is limited to close confinement by offering the context from which this limitation is taken. However,

---

**7.** The qualitative description emphasizes the relative closeness of confinement. The word "slightly" is sufficient on its own to impart the idea. Still, the specification adds "only" to intensify the meaning of "slightly." The quantitative measure, 1/8 to 3/4 inch, further reinforces the adoption of a special limited meaning. On a given block measuring almost 12 inches from front to back, 1/8 to 3/4 inch suggests relative close confinement. Even on a non-relative scale, 1/8 to 3/4 inch is small.

the context fails to serve this end. The specification expressly says: "... the area of the insets adjacent the block top surface 10 is preferably larger than the protrusion 26 by a factor of 5% or more and preferably about 1% to 2% or more." ('183 patent, col. 4, lines 41–44.) This language only reinforces the conclusion that "mate" means close confinement. An inset that is larger than the protrusion it holds by a factor of 5 percent must be seen as closely confining that protrusion.[8]

### ii. Ability to Secure Blocks in Place

It is well established that:

the prosecution history of a patent contains: 'all express representations made by or on behalf of the applicant to the examiner to induce a patent grant.... Such representations include amendments to the claims and arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and non-obviousness. Thus, the prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.'

*Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed.Cir.1990) (quoting *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed.Cir.1985)).

When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed.Cir.1999) (citing *Jonsson*, 903 F.2d at 817–818).

During prosecution of the common parent application to the '363, '183, and '129 patents Anchor argued that its claimed block is distinguishable over prior art references because the claimed insets are for mating with a protrusion of a second similarly configured block and that the prior art "references require some form of additional engagement structure ... to **secure each of the blocks** in place." (*See* Skaar Aff., Ex. 7 at 11 (emphasis added).) The distinction argued by Anchor compels the court's adoption of a special limited meaning for the term "mate." Here, the prosecution history is compelling. The specifications state that the protrusion functions in concert with sidewall insets 22A and 22B to **secure the blocks** in place when positioned in a series or together by aligning the protrusions 26 within the given insets. ('183 Patent, col. 5, lns. 1–4 (emphasis added).) The claim term "mate" thus requires the ability to secure the blocks in place.[9]

---

8. Plaintiff also argues that the prosecution history of the original patent application (U.S. Patent Application S.N. 07/957,598) prevents the court from attaching a special limited meaning to "mate." An examination of the prosecution history is particularly important where, as in the instant case, the claimed invention is in a crowded art. *See Amhil Enter. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1559–62 (Fed.Cir.1996). Allegedly, claim 25 of that patent reads, "the block of claim 1 wherein the area of each inset adjacent said block bottom surface is larger than the area of said protrusion." This claim was allowed. Plaintiff argues, therefore, that "mate" can be no less broad than the above phrase, "larger than the area of said protrusion." This argu-

ment fails. The comparative phrase, "larger than the area of said protrusion" is too vague. "Larger than" could mean that the inset is larger than the protrusion it holds by a factor of 5% or 500%. The court is not prepared to grant the claim such a broad scope in an old and crowded art because doing so would probably invalidate the patent.

9. Plaintiff argues that the prosecution history is not controlling because the invention was distinguished from the prior art, not for its ability to secure the blocks in place, but rather because of the fact that the prior art had pins. That is, the prior art was distinguished for physical differences, not for different functions. Plaintiff is correct that, while the dif-

### iii. Interlocking of Protrusion with the Insets

The specifications attach "interlocking" to the meaning of "mate" because they use the words interchangeably. The specifications state, "the use of the dogbone shaped protrusion 26 allows for retention of these blocks in an interlocking fashion with the blocks of lower courses to form a wall of high structural integrity." ('183 Patent, col. 6, lns. 21–24 (emphasis added).) The court finds that this substitution of the term "interlocking" for what would be "mating" has two effects.

First, it raises a presumption that the patent applicant intended to create a special limited meaning for the claim term "mate." The claim itself uses the term "mate" to describe the function of the protrusion with respect to the insets. This excerpted part of each specification describes the very same function. Yet, here the patent prosecutor uses a different word, "interlocking." This variation in diction between two phrases designed to impart the same idea invites the meaning of "interlocking" into the claim term "mate."

Second, this interchange strengthens the connection of the other special limited meanings discussed *supra* with the term "mate." The term "interlocking" is highly suggestive of "close confinement" and the "ability to secure in place." [10]

The court is thus satisfied that "mate" has the special limited meanings ascribed to it by defendants. [11]

### b. The Claim Term "Back Surface"

The court agrees with Rockwood that "back surface" as it is claimed in the '363, '183, and '129 patents must include the special characteristic of spanning the full width of the block. The shape of the block in each and every embodiment presented in the Anchor patents discloses and teaches a back portion that extends toward the sides so that two adjacent blocks in a given course of blocks have abutting back surfaces. (*See* Figs. 1, 3, 3A, 4, 6, 6A, 7, 9, 10, & 11 of the '363 patent.) The specification further states that, "[i]f the desired structure is to be inwardly curving, blocks of the invention . . . may be completed by striking leg 24A or 24B with a chisel adjacent deflection 19,

ferences in the way the patented invention and accused device function certainly are relevant to a doctrine of equivalents analysis, these considerations are not legally relevant to whether a device falls within the literal language of the asserted claim, which is the question before the court. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1278 (Fed. Cir.1995).

10. "Interlocking" is probably more suggestive of these connotations than "mate" itself, the term for which it is substituted synonymously. The adjective "interlocking" has its root in the verb "interlock," which is derived from "lock." According to *Merriam–Webster Collegiate Dictionary* 684 (10th ed.1998), the term "lock" means "to make or become rigidly fixed or immovable." The court is satisfied that the interchange of "interlocking" with "mate" supports the adoption of the other special limited meanings of "mate."

11. The court chooses not to accord the extrinsic evidence marshaled by the plaintiff any weight in its analysis of the claim term "mate." Rockwood's technical literature is offered to provide the view of one skilled in the art. The court acknowledges that such evidence may properly serve this purpose. However, the court will not examine a brochure for the accused device in order to construe the claims of Anchor's patents when the meaning of the claims is clear from the intrinsic evidence. The expert testimony of Mr. Strawbridge is rejected for the same reason. It is the claim language of the patent that the public may rely upon for notice. *See London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed.Cir.1991) ("if the public comes to believe (or fear) that the language of patent claims can never be relied on . . . then claims will cease to serve their intended purpose . . . [c]ompetitors will never know whether their actions infringe a granted patent.")

*see* FIGS. 1 and 4." ('183 patent, col. 8, lns. 10–15.) The court fails to see how the characteristic, "spanning the full width of the block," cannot inhere in the claim term "back surface." The specification would not address the necessity of chiseling off a portion of that "back surface" if it did not inhere in the meaning of the term that the "back surface" spanned the full width. This conclusion is reinforced by the fact that each of the preferred embodiments details a "back surface" spanning the full width of the block. Accordingly, the court construes this term to include the characteristic of "spanning the full width of the block."

### c. The Claim Term "Protrusion"

■ The specifications state that, "[t]he central narrow portion in the protrusion 26 (FIGS 1–6) allows for orientation of the blocks to provide inner curving and outer curving walls by the aligned seating and the relative rotation of the protrusion 26 within, and in relationship to, any block inset 22A or 22B." ('183 patent, col. 5, lns. 9–13.) The court concludes that this attaches the characteristic of having a central narrowed portion to the term "protrusion."

As the specification explicitly states, the central narrow protrusion allows for curving walls. The negative inference to be drawn from this statement is that such curving is impossible without the central narrow portion of the protrusion. If the narrowed portion were not present, binding would prevent the claimed relative rotation due to the interference between the protrusion and the insets. The court fails to see how the limitation of having a central narrow portion does not inhere in the "protrusion" when the absence of this feature would destroy the ability to make serpentine walls claimed as part of the invention. (*See* '183 patent, cl. 14 ("whereby serpentine walls may be constructed from a plurality of such blocks").)

### 2. Literal Infringement

■ After the claims are construed as a matter of law, the court must consider whether "a reasonable trier of fact could find that every limitation in any construed claim at issue" may be found in the accused device. *Unidynamics Corp. v. Automatic Prod. Int'l, Ltd.,* 157 F.3d 1311, 1316–17 (Fed.Cir.1998). Thus, the court must now compare the claims as construed to the allegedly infringing device.

At the outset, the court notes that the parties here appear to agree that summary judgment is appropriate according to the court's adoption of the particular claim construction. That is, plaintiff fails to argue that defendants' Classic block would still infringe if the court adopts defendants' claim construction. Plaintiff therefore apparently agrees that defendants' Classic block does not infringe, as a matter of law, under the above delineated claim construction and that there can be no fact question on the issue of infringement.

■ Notwithstanding plaintiff's failure to assert infringement upon the adoption of defendants' claim construction, when comparing the alleged infringing Classic block with the claims as construed, the court concludes that there is no literal infringement. Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, or put differently, when "the properly construed claim reads on the accused device exactly." *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1331 (Fed.Cir.2001) (quoting *Amhil Enters.,* 81 F.3d at 1562); *Dolly, Inc.,* 16 F.3d at 397 (an accused device must include every claim limitation of the claim). If just one limitation is missing or is not met as claimed, there is no literal infringement. *London,* 946 F.2d

at 1539; *Mas–Hamilton Group v. La Gard, Inc.*, 156 F.3d 1206, 1211 (Fed.Cir. 1998).

After a careful review of the record and the relevant case-law, the court determines that no reasonable factfinder could find that the defendants' Classic block infringes on plaintiff's patents as construed. The Classic block does not "mate," does not have a "back surface," and does not have a "protrusion" as defined by plaintiff's patents. The Classic block is missing one or more of the characteristics mandated by the proper construction of the claims.

First, the Classic block does not "mate" as defined by plaintiff's patents because it lacks the required close confinement, the ability to secure the block in place, and the interlocking protrusion with inserts as construed.[12] Furthermore, the Classic block does not have a "back surface" matching the construed definition.[13] Finally, the Classic block lacks the characteristic of a "protrusion" having a central narrow portion.[14]

Accordingly, there is no infringement and defendants are entitled to summary judgment on the '363, '183, and '129 patents as a matter of law.[15]

12. The court agrees with defendants that the contact between the extension and sidewalls of the Classic block fulfills none of these requirements. The extension of the Classic block merely contacts the forward most portion of the inset when in a minimum setback condition. Thus, the extension does not mate with the sidewalls by any definition. The protrusion and sidewall of defendants' blocks do not cooperate to restrain the block's setback in both a forward and backward direction. The forward setback is limited by the abutment of the protrusion with the forward surface of the sidewall of a lower block. And the rearward setback is not restrained. Thus, the Classic block can be pulled or pushed completely off the lower course of blocks since there is no restrained surface to prevent such movement. Accordingly, the court concludes the extension is not "mated" with the sidewall, "interlocked," or "secured in place." Because the extensions of the Classic block do not mate with the sidewalls of the receptive blocks, the Classic block does not literally infringe the Anchor patents.

13. The Classic block instead has a partial back side portion with pointed side extensions that do not abut each other when placed adjacently in a course of blocks. Plaintiff's patents thus do not read on the back surface of the Classic block.

14. The "protrusion" on the Classic block is not a protrusion as claimed by Anchor, but rather a square extension extending from the bottom surface of the block. If the square extension of the Classic block was to be placed on the blocks shown in the Anchor patent's figures and mated with the inset of another of said blocks, the resulting Anchor block would not be able to be rotated relative to the insets since binding interference, at the central portion of the extension, would prevent the rotation. Because the protrusion of the Classic block cannot be used with the Anchor block, the court determines that defendants' block lacks the claimed protrusion element.

15. While plaintiff asserts that it has not waived a doctrine of equivalents argument on these patents, the court concludes that the argument presented by plaintiff is insufficient. That is, plaintiff fails to adequately set forth in either its briefs or oral argument a persuasive doctrine of equivalents argument. The court thus concludes that it fails as a matter of law. *See Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.*, 873 F.2d 1422, 1425 (Fed.Cir. 1989) ("[t]he party asserting infringement must present 'evidence and argument concerning the doctrine and each of its elements.'") (quoting *Nestier Corp. v. Menasha Corp.*, 739 F.2d 1576, 1579 (Fed.Cir.1984)). While the determination of whether an accused device infringes under the doctrine of equivalents is normally a question of fact, a district court may grant summary judgment "when it is shown that the infringement issue can be reasonably decided only in favor of the movant, when all reasonable factual inferences are drawn in favor of non-movant." *Voice Tech. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 612 (Fed.Cir.1999); *Caterpillar, Inc. v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed.Cir. 2000).

## III. The Cottage Blocks and the '015,- '713, & '168 Patents

Anchor is the holder of three additional patents relating to blocks used to construct retaining walls. Rockwood manufactures and sells "Cottage Stone" blocks that, much like the Classic block, has interlocking features that facilitate building retaining walls without the need of a bonding substance or other support structure. The alleged infringement regarding the Cottage Stone blocks, however, concerns not the protrusion and insets, but rather several surface characteristics of the block.

The parties have filed cross-motions for summary judgment on the issue of infringement. The parties do not dispute the relevant facts of the Cottage Stone blocks. If the parties do not dispute any relevant facts about the accused invention but instead assert two different meanings for the patent's claims, then "the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives,* 73 F.3d at 1578. Even if the parties disagree about the meaning of key terms in the patent claims, summary judgment may be appropriate since a mere dispute over the meaning of a term does not in and of itself create an issue of fact. *Id.* Thus, these cross-motions cause the resolution of the controversy to hinge on the court's claim construction.[16] That is, the court concludes that summary judgment on the issue of literal infringement is proper since no genuine issue of fact exists after the court construes the claims and each party agrees that the court must, as a matter of law, rule against the party whose interpretation of the claims is not adopted. Thus the court's primary task is to interpret the meaning of the claims.[17]

After careful consideration, the court concurs with defendants that the proper construction of the claims of the Anchor patents gives the disputed claim terms their ordinary meanings. Moreover, the court determines that no rational jury could find that the Cottage Stone blocks literally infringe the '015, '713, and '168 patents or infringe under the doctrine of equivalents when the claim terms in these patents are given their ordinary meanings. Defendants' motion for partial summary judgment of noninfringement of the '015,- '713, and '168 patents is therefore granted.

### 1. Claim Construction

Anchor asserts that Rockwood's Cottage Stone II, III, and IV blocks infringe independent claims 1, 2, 28, 38, 41, and 50 of the '015 patent, independent claims 1, 8, 30, 36, 43, 47, 61, and 70 of the '713 patent, and independent claim 1 of the '168 patent.[18] The disputed claim terms are

---

**16.** In the claim construction of the '363, '183, and '129 patents above, plaintiff advocated an ordinary meaning interpretation, and defendants argued for an interpretation recognizing special limited meanings for the disputed claim terms. Now, however, it is defendants who argue for an interpretation respecting the ordinary meaning of the claim terms, and plaintiff who advocates special limited meanings.

**17.** Summary judgment on the issue of infringement under the doctrine of equivalents is also proper since plaintiff has failed to produce sufficient evidence to rebut defendants' showing of noninfringement under the

doctrine of equivalents. *See Lear Siegler,* 873 F.2d at 1425.

**18.** The disputed claim terms reoccur in the dependent claims of the '015, '713, and '168 patents. A dependent claim contains all of the limitations of the claim from which it depends. 35 U.S.C. § 112, 4. Accordingly, if an independent claim is not infringed, no claim depending from it can be infringed. *See Wahpeton Canvas,* 870 F.2d at 1553. Anchor asserts that the Cottage Stone II, III, and IV literally infringe claims 1, 2, 3, 5–7, 9–11, 13–16, 19, 20, 28–43, 46, 50, and 51 of the '015 patent; that the Cottage Stone III and IV infringe claims 1, 28–37, 38–40, 41–

"area," "parallel," and "planar," as they appear in these independent claims. The disputed claim terms have their origin in amendments made to claims 1 and 2 of the '015 patent.[19] It is significant that in the prosecution history of these patents all of the claims of the original patent application constituting the basis for the '015 patent were rejected for obviousness.[20] In response, claim 1 of the '015 patent was amended to add, among others, the following limitations: "a generally planar upper surface and a generally **planar** lower surface," said surfaces "being substantially **parallel** to each other." (*See* Ulbrich Decl., Ex. 7 (emphasis added).) Claim 2 was amended to add the limitation "the **area** of the upper face is greater than the **area** of the lower face." *See id.* (emphasis added).

In interpreting an asserted claim, the court should look first to the intrinsic evidence, that is, the patent's claim language, specification, and prosecution history. *See*

*Vitronics,* 90 F.3d at 1582. As for claim language, the court should generally attribute the ordinary meaning to a disputed claim term, unless the patentee clearly states in the specification that the term is defined in the specification in a way that is inconsistent with its ordinary meaning. *Id.* (citations omitted).

■ The court concludes that the specifications and prosecution histories of the '015, '713, and '168 patents do not contradict the ordinary meanings of the claim terms "area," "parallel," and "planar." The court is bound by these ordinary meanings.[21] *See id.* (providing that the court should attribute ordinary meaning to term unless something in written description suggests that patentee intended the unambiguous language to be construed in a manner inconsistent with its ordinary meaning).[22] The court now will address each of the Cottage Stone blocks and its alleged infringing features.[23]

---

43, 46, 50, and 51 of the '015 patent under the doctrine of equivalents; that the Cottage Stone III and IV literally infringe claims 1, 7–14, 16–23, 30–34, 36–38, 40, 41, 43–48, 56, 61, 64–66, 68, 70, 71, and 74 of the '713 patent; and that the Cottage Stone III and IV literally infringe claims 1, 4, 5, 7, 9, and 13 of the '168 patent. These are dependent claims. It is therefore unnecessary for the court to address each of these claims separately. The court's analysis of the claims may be particularized to the independent claims containing the disputed terms.

**19.** The '015 patent preceded the '713 and '168 patents in time. It issued in October of 1998. The '713 patent issued in November of 2000, and the '168 patent issued in February 2001. The later patents are based on the independent claims of the '015 patent.

**20.** The patent examiner rejected the claims for obviousness in light of U.S. Patent 4,564,043 in view of U.S. Patent 4,909,010. (*See* Ulbrich Decl., Ex. 7.)

**21.** In the case of the Classic block, the claim terms invited the special limited meanings found in the written description and file histo-

ries. "Mate," "back surface," and "protrusion" are words whose meanings are malleable. They allow for, and even invite, the importation of special limited meanings from the written description and file history. Moreover, such special limited meanings are necessary to avoid invalidating the patents in a crowded art. No such interpretations are possible regarding the claim terms at issue here, however. Each of the disputed claim terms describes a mathematical concept. The court cannot properly interpret these claims to mean anything that conflicts with the basic mathematical concepts they describe.

**22.** The ordinary meaning of the claim language in the Anchor patents precludes not only a finding of literal infringement, but also a finding of infringement under the doctrine of equivalents. The doctrine of equivalents cannot be used to disregard limitations of a patent claim; the doctrine must be applied to each limitation, and no limitation may be ignored. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

**23.** The court notes that a factual comparison of the patent claims and the product is unnec-

### a. The Cottage Stone II

 The Cottage Stone II block does not literally infringe any of claims 1, 2, 28, 38, 41, or 50 of the '015 patent because it lacks one or more of the claim limitations. Specifically, the accused device lacks the limitations of "parallel," "area," and "planar" in their ordinary meaning. Nor does the Cottage Stone II infringe the '015 patent under the doctrine of equivalents. These limitations are entitled to no range of equivalents on account of prosecution history estoppel, which is discussed last.

Under the court's literal infringement analysis, it is disputed whether the Cottage Stone II infringes claim 38 of the '015 patent because plaintiff rejects the ordinary meaning of "parallel." That is, plaintiff and defendant disagree as to the meaning of the claim, "a bottom face which is generally **parallel** to the top face." ('015 patent, cl. 38 (emphasis supplied).)

The claim term "parallel" is defined to mean "everywhere equally distant." *Merriam–Webster Collegiate Dictionary* 842 (10th ed.1998). The limitations containing this term must therefore read: "a pair of substantially [everywhere equally distant] and planar upper and lower faces."

Plaintiff's position is that this term should be read loosely. Plaintiff argues that the flat portions of the bottom face near the front of the Cottage Stone II block and just ahead of the rear lip constitute a plane that is parallel to the top surface of the block.[24] The patent specifi-

cations and file histories describing these functions are not sufficient evidence, however, to overcome the presumption that "generally parallel" retains its ordinary meaning.

The court adopts for the ordinary meaning of all three claim terms, "parallel", "planar," and "area." The claim term "parallel" is a descriptor whose validity can be empirically verified. It is a mathematical concept that is either true or false. Either the top and bottom surfaces of the Cottage Stone II are parallel, or they are not. This dichotomy severely restricts the spectrum of meanings that the court may recognize for the term.

Unlike "mate," "back surface," and "protrusion," "parallel" is not a word whose meaning can bend. A bottom face with a concave portion is not parallel to a top face that is perfectly planar.

Plaintiff argues that the modifier "generally" in the phrase at issue may allow for the concave portion of the bottom face of the Cottage Stone. The court, however, cannot conclude that this modifier is sufficient to change the meaning of the term to which it is attached. The court believes that modifiers, no matter how strong, cannot alter the meaning of a claim term describing a mathematical concept so that the concept would be false if read to describe an accused device.

Plaintiff disputes defendants' construction of claims 1, 2, 28, 41, and 50 of

essary in this case because such a comparison takes place by way of implication during the court's claim construction. That is, each interpretation of the claims advocated by the parties is an *ad hoc* interpretation of the claims designed to either affirm or negate the conclusion that the accused device has the limitations of the claim. The only special limited meanings put forth by plaintiff are precisely those factual properties found in the Cottage Stone blocks. If the court rejects plaintiff's argument, it must consequently find

no infringement. Therefore, in order to facilitate clarity, the court will omit any lengthy comparison of the features of the Cottage Stone to the construed claims. This second step in the infringement analysis is already performed by the parties' claim constructions.

24. The notion that these flat portions constitute a plane is used by plaintiff to rebut defendants' position that the Cottage Stone II lacks the claim limitations of having a bottom surface that is "planar," discussed *infra*.

the '015 patent because plaintiff rejects the ordinary meaning of the claim term "planar." As noted, plaintiff contends the flat portions on the bottom surface of the Cottage Stone II block constitute a plane such that would infringe the Anchor patents.

"Planar" has the ordinary meaning of "two-dimensional in quality." *Merriam–Webster Collegiate Dictionary* 889 (10th ed.1998). Limitations containing "planar" must therefore be construed as: "a pair of substantially parallel and [two-dimensional in quality] upper and lower faces."

Plaintiff would have the court conclude that the claim term "planar" is used in its general sense so that the concavity of the bottom surface is immaterial. Plaintiff cites as support for this proposition examples in the '015 patent of the term "planar" used to describe the ground where the ground is not perfectly flat. The court does not accept, however, that the use of "planar" in its general sense, even if modified by the terms "generally" or "substantially," claims as the subject matter of the Anchor patents a concave bottom surface such as that of the Cottage Stone II.

Plaintiff also disputes defendants' construction of claims 1, 2, 28, and 41 of the '015 patent and claims 1, 8, and 36 of the '713 patent because plaintiff rejects the ordinary meaning of the claim term "area." These claims recite blocks comprising a bottom or lower surface having a smaller area than that of the top or upper surface. The Cottage Stone II features a bottom surface that has an area larger than the area of the top surface.

The dictionary definition of "area" is "the number of unit squares equal in measure to the surface." *Merriam–Webster Collegiate Dictionary* 61 (10th ed.1998). Therefore, the limitations containing this word must read: "the [measured surface]

of the upper face is greater than the [measured surface] of the lower face."

Plaintiff would have the court conclude that the "*area*" of the bottom surface is subject to a variable meaning whereby the area of the bottom surface of the Cottage Stone II could be seen as smaller than that of the top surface. The court holds that "area" is not suited to such a loose interpretation.

Plaintiff submits as support for its position two claims that, if viewed in concert, supposedly counsel in favor of a loose interpretation of "area." Independent claim 1 of the '713 patent recites a block with a bottom surface having a smaller area than that of the top surface. Claim 67 depends on claim 1, and recites a block further having at least one core in the bottom surface of the block. For the area of the bottom surface to be smaller than that of the top, plaintiff argues, the calculation of the "area" of bottom surface of the block must exclude the core, that is, any indentations or concavities. Plaintiff asserts that the prosecution history demonstrates this was the intention of the inventors, and that claims 36 and 41 of the '713 patent define "area" in such a way.[25] Claim 36, in particular, recites a block with a "lower surface having a smaller surface area for block-to-block contact than the surface area of said upper surface, said smaller surface area being the result of the formation of the flange on the lower surface." Plaintiff submits that the block-to-block contact, which implicitly excludes indentations or concavities, is the relevant measure of bottom surface "area."

Plaintiff's argument prompts two responses. First, claim 67 does not necessarily reinforce the suggestion from claim 36 that block-to-block contact is the relevant measure of bottom surface area. The

**25.** Plaintiff's reliance on the Janopaul declarations, however, is accorded no weight.

inclusion of the core described in claim 67 in the calculation of surface area would not *always* make the bottom surface area greater than the top surface area. Claim 36 must therefore be considered on its own merits. Second, in considering claim 36 on its own, the court concludes that the block-to-block contact is not the relevant measure of surface area. The language of the claim does not require this construction. The surface area referred to in the claim is qualified, it is the "surface area **for block-to-block contact**." (emphasis added). This contrasts with the "surface area of the said upper surface." The court believes this contrast is evidence that surface "area" cannot be limited to block-to-block contact. If the term were so limited, then it would not have been qualified.

Claim 36 does not necessarily reinforce the exclusion of the core described in claim 67 from the measure of bottom surface area either. The first clause of claim 36 does nothing but support the claim limitation that the area of the lower surface must be smaller than the top.[26] The second clause, however, rebuts plaintiff's position. The "said smaller surface area" is the result of the "formation of the flange on the lower surface." That is, the flange allegedly causes the surface area to decrease. It is not counted in measuring the bottom surface area. The flange is not counted in measuring the bottom surface area because, presumably, it is not considered part of the surface. The flange is "on the lower surface," not part of it. The court does not believe that indentations or concavities are "on the lower surface," however. Rather, these are still part of the bottom surface. The core described

by claim 67 could therefore be counted in the bottom surface area.

Lastly, plaintiff is barred from a finding of infringement under the doctrine of equivalents because of prosecution history estoppel. Application of the doctrine of equivalents to a claim limitation is barred "when an amendment has narrowed the scope of a claim for a reason related to patentability." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, 574 (Fed.Cir.2000). As emphasized earlier, the three claim terms in dispute all originated in an amendment made to the first patent. These claim terms were added in order to overcome obviousness as the reason for the original application's rejection. The court thus concludes that there is no range of equivalents available for the terms.

### b. The Cottage Stone III

The Cottage Stone III does not literally infringe any of claims 1, 2, 28, 38, 41, or 50 of the '015 patent because it lacks one or more of the limitations of the patent.[27] The Cottage Stone III cannot infringe any of claims 1, 28, 38, 41, or 50 of the '015 patent in a doctrine of equivalents analysis because it lacks one or more of the limitations that are entitled to no range of equivalents because of prosecution history estoppel.

The Cottage Stone III has a concave bottom surface like the Cottage Stone II. Anchor alleges this concave bottom surface infringes the '015 and '713 patents in the same way the Cottage Stone II does. The determination of infringement regarding the concave bottom surface of the Cottage Stone III involves the same analysis of

---

**26.** Claim 36 recites a block with a "lower surface having a smaller surface area for block-to-block contact than the surface area of said upper surface, said smaller surface area being the result of the formation of the flange on the lower surface."

**27.** The court reaches this holding because plaintiff fails to make any arguments rebutting defendants' assertion of non-infringement of these claims.

claims regarding a "parallel," "planar," and "area" as that conducted for the Cottage Stone II block *supra*. The court holds that the concave bottom surface of the Cottage Stone III does not infringe the '015 and '713 patents for the same reasons that the concave bottom surface of the Cottage Stone II does not infringe the Anchor patents with respect to these terms.

Plaintiff presents a different argument for infringement concerning the limitation in claim 38 [28] that the block must have "a rear face **which is an extension** of the block rear face below the bottom face of the block." (emphasis supplied). The Cottage Stone III has a rear lip, but the rear lip is inset about a quarter of an inch from the block rear face. Plaintiff asks the court to conclude that the rear lip does not have to be coplanar with the rear face, putting forth evidence from the prosecution history that the inventors withdrew this limitation because it was too narrow. (Ali Decl., Ex. A at 4.) It is also asserted that nothing in the written description, claims, or prosecution history suggests that the quarter-inch jog between the rear face of the block and the rear face of the lip disqualifies the lip from being described as an extension of the rear face of the block. Clause (f) of claim 38, in fact, states that the rear lip is "located adjacent to the rear face of the block." The principle of claim differentiation, which plaintiff fails to cite, requires the court to confer a separate meaning on new language in a patent. *See Tandon Corp. v. ITC*, 831 F.2d 1017, 1023 (Fed.Cir.1987) ("[t]o the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differen-

tiation states the presumption that the difference between claims is significant.") *See id.* at 1023. Plaintiff argues that if the court construes the claim to disqualify a rear lip inset by a quarter-inch from being an extension of the rear face, then the term "adjacent" would be superfluous language.[29] This argument fails.

The quarter-inch jog between the rear lip and the rear face disqualifies the rear lip of the Cottage Stone III from being an extension of the rear face more than the phrase "located adjacent to the rear face of the block" constitutes it as such. That is, an extension does not exist where interrupted by a quarter-inch inset. Moreover, the weight of the term "extension" is greater than the descriptor "adjacent" in this analysis since "extension" is equated with the "rear face." The rear lip constitutes an "extension" independent of any other part of the block. "[A]djacent" only describes the rear lip relative to something else. The court concludes this is a less authoritative definition of a rear lip.

Plaintiff supports its argument for literal infringement of claim 38 with reference to the insubstantial differences of function and result of the flange of the Cottage Stone III compared to that claimed in the '015 patent. This confuses the two theories of infringement. On a summary judgment motion, the evidence is viewed in the light most favorable to the non-movant and all justifiable inferences are to be drawn in the non-movant's favor. *See Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the court considers the evidence for the theory of infringement it supports. The court remains unsatisfied that plaintiff has developed with sufficiency its theory of

---

**28.** Plaintiff advances this very same argument for infringement of claim 43 of the '713 patent, which has the same phrase, "located adjacent to the rear face of the block." Claim terms must be interpreted the same throughout the patent. The court thus holds that

claim 43 is not literally infringed by the Cottage Stone III for the reasons discussed here.

**29.** Again, the Janopaul declarations carry no weight in this consideration.

infringement under the doctrine of equivalents to survive a motion for summary judgment.

Plaintiff challenges defendants' motion for partial summary judgment of non-infringement under the doctrine of equivalents by arguing only that equivalents are still available with respect to the term "an extension of the rear face of the block" in claim 38 of the '015 patent. This argument has no merit. Application of the doctrine of equivalents to a claim limitation is barred "when an amendment has narrowed the scope of a claim for a reason related to patentability." *Festo*, 234 F.3d at 574. The amendment from "coplanar" to "extension" was submitted for an unstated purpose, but was narrowing. It is thus presumed to have been submitted for patentability purposes. *See id.* at 568.

■ The court is further convinced that the accused device does not infringe under the doctrine equivalents because defendants have a patent for its invention. A separate patent is strong evidence of non-infringement. Rockwood is the holder of U.S. Patent No. 6,250,850 (the " '850 patent"), which is for a block with a multifaceted and curved bottom surface. (*See* Ulbrich Decl., Ex. 4.) The patent examiner considered Anchor's '015 patent during the prosecution of the '850 patent and did not make any rejections on that basis. (*See* Ulbrich Decl., Ex. 5, Paper No's. 2 & 6.) *See Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed.Cir.1996) (holding that, "when a competitor is aware of a patent and attempts to design around it, 'the fact-finder may infer that the competitor ... has designed substantial changes into the new product to avoid infringement under the doctrine' [of equivalents]") (citations omitted). The doctrine of equivalents generally cannot be applied when the accused infringing device is covered by a

separate patent that references the alleged infringed patent, because the presumed non-obviousness of the separate patent prevents the accusing party from claiming an insubstantial change. *See Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir.1996).

The Cottage Stone III does not literally infringe any of claims 1, 8, 30, 36, 43, 47, 61, 66, 68, or 70 of the '713 patent because one or more of the limitations is absent from the accused device. Plaintiff contests only one claim interpretation put forth by defendants. Plaintiff argues that the Cottage Stone III literally infringes claim 70 of the '713 patent. The court does not agree. The sidewalls of the Cottage Stone III lack a second part that joins a respective sidewall surface first part to the back of the surface. The second parts do converge towards each other, but do not intersect the back surface. Only the third parts intersect the back surface and they do not do so at an angle of less than 90 degrees.

The Cottage Stone III cannot literally infringe claim 1 of the '168 patent because one or more of the limitations is missing. Claim 1 describes a method of making the block as well as the actual block itself. It recites steps (a)-(j) for performing such a method of manufacture. Plaintiff would have the court interpret the method as *comprising* the steps listed. "Comprising" is a term of art in patent parlance leaving the steps defined by the claim open-ended so that further steps may be included. *See Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed.Cir.1999). In this view, claim 1 does not necessarily include all of the steps used to make the recited block. An open-ended construction of this claim such as plaintiff would have the court adopt claims the steps in which the Cottage Stone III is made.[30] Plaintiffs

---

**30.** The only evidence plaintiff offers that the process for making the defendants' blocks is covered by this claim is in the stricken expert testimony of Peter Janopaul.

have not met the burden of proof in showing this is the proper construction of the claim. Element (j), as written, requires the block to have several claimed features upon the step of curing. Anchor would have the court rewrite claim 1 to split the apparatus language off from step (j) so that the unstated steps could be interposed. The court, however, refuses to allow plaintiff to so impermissibly broaden the literal scope of the claim.

### c. The Cottage Stone IV

The Cottage Stone IV block differs from the Cottage Stone III only in that the Cottage Stone IV has a rounded front face instead of the three-planed faceted front face. Plaintiff does not allege that this feature infringes the Anchor patents. Therefore, the court need not set forth a separate analysis of infringement for the Cottage Stone IV. The Cottage Stone IV does not infringe the '015, '713, and '168 patents, at minimum, for the same reasons that the Cottage III block does not infringe the Anchor patents.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for partial summary judgment of noninfringement of U.S. Patent Nos. 5,490,363 (the " '363" patent), 5,704,183 (the " '183" patent), and 5,711,129 (the " '129" patent) [Docket No. 90] is granted;

2. Defendants' motion for partial summary judgment of noninfringement of U.S. Patent Nos. 5,827,015 (the " '015" patent), 6,142,713 (the " '713" patent), and 6,183,168 (the " '168") [Docket No. 64] is granted;

3. Plaintiff's motion for summary judgment [Docket No. 51] is denied;

4. Defendants' motions to strike the declarations of Peter Janopaul [Docket Nos. 67 and 85] are granted; and

5. Plaintiff's motion to strike the Declaration of Raymond Price [Docket No. 87] is granted.